## GUZIK v. UNITED STATES.

### No. 4533.

Circuit Court of Appeals, Seventh Circuit.

Dec. 10, 1931.

Rehearing Denied Jan. 11, 1932.

William F. Waugh, George N. Murdock, and J. J. Goshkin, all of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., Jacob I. Grossman, Asst. U. S. Atty., and Dwight I. Green, all of Chicago, Ill., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellant was convicted on all three counts of an indictment charging willful attempts to defeat and evade an income tax to the extent of: $150,934.87 upon an alleged gross taxable income of $642,154.43 for 1927; $71,569.85 upon an alleged gross taxable income of $338,147.92 for 1928; and $3,394.87 upon an alleged taxable income of $54,900 for 1929. Each count charged the willful attempt to evade the tax by filing a return wherein it was stated that the taxpayer's income was much less than that actually received by him for each of the years in question. Upon a verdict of guilty, the court sentenced appellant to two years in the penitentiary and imposed a fine of $7,500 on both counts 1 and 2, and a year and a day in the penitentiary and a fine of $2,500 on count 3. The sentences were to be served consecutively, and the fines imposed were cumulative.

The assignments of error may be divided into three classes: (1) Errors in overruling appellant's demurrer to the indictment asserted to be invalid because (a) charging a crime under section 1266, title 26, USCA, which is not applicable to income tax violations; (b) of the lack of an assessment of the tax, which assessment it is alleged is required by 26 USCA §§ 1045, 1047, 1048, and 1050; (c) charging a consummated offense; and (d) the Revenue Acts of 1926 and 1928 are unconstitutional because of indefiniteness. (2) The second class of assigned errors relates to the admission in evidence: (a) Of the bank's records, (b) of computations and conclusions of an accountant based upon assumptions claimed not to have been proved, (c) the refusal to admit in evidence testimony showing no taxes due by appellant, and (d)

the refusal to admit evidence of policy of the Department with respect to the preparation and form of returns of taxpayers engaged in illegal occupations. (3) The remaining assignments of error are directed to the overruling of appellant's motion to direct a verdict and to the court's instructions to the jury.

In order to prove gross income, and therefore probable taxable income of the appellant, the government introduced the following evidence: Bank deposits in two banks (one account was under an assumed name) totaling $953,303.93; cashier's checks cashed by appellant but not deposited, totaling $48,000; dividends of $37,500 received by appellant's physician on stock alleged to have been transferred to him by appellant in order to evade surtax; the testimony of a general cashier of appellant's gambling establishments that he, under instruction of the appellant, converted surplus from the operation of a gambling business into cashier's checks (totaling $147,500), which he delivered to appellant's messenger.

Appellee contends that the evidence showed reported and actual income as follows:

|      | Reported Income | Actual Income |
|------|-----------------|---------------|
| 1927 | $18,090         | $ 647,654.43  |
| 1928 | 24,000          | 333,654.92    |
| 1929 | 18,150          | 63,044.11     |
|      | $60,240         | $1,044,353.46 |

■ It will be unnecessary to again discuss the various assignments of error passed upon by this court since this appeal was taken. The indictment is properly drawn under section 1266, 26 USCA, which we held applicable to income tax violations in Capone v. United States, 51 F.(2d) 609; O'Brien v. United States, 51 F.(2d) 193; and Oliver v. United States, 54 F.(2d) 48, decided by this court on December 2, 1931. The contention that the indictment for attempt to evade was not good because the attempt was consummated was rejected in O'Brien v. United States (C. C. A.) 51 F.(2d) 193. Appellant contends that the bank records were not admissible in evidence because they neither proved nor tended to prove gross or net income. In the Oliver Case, supra, we stated that "this (the deposits) alone, perhaps, is not sufficient to justify the conclusion that this was all income, but it is substantial evidence to be considered in determining that question." Such bank records were also held admissible, if properly established, in Capone v. United States (C. C. A.) 51 F.(2d) 609.

■ The contention is made, and is here rejected, that an assessment of the deficiency tax due is necessary before the taxpayer can be prosecuted criminally for the charges preferred. The crime is complete when the violator has, as in this instance, knowingly and willfully filed fraudulent returns with intent to evade and defeat a part or all of the tax.

■ The contention, that the court erred in refusing to admit records of the collector of internal revenue to show that no tax was due, is answered by the above discussion relative to the necessity of an assessment of a deficiency tax by the collector preliminary to prosecution for evasion of tax liability. The failure of the government to discover the error in the return or its failure to assess promptly a deficiency tax after discovery of the taxpayer's deception has no connection with the commission of the crime.

■ Objection was made to the submission of a hypothetical question asking a witness to calculate the amount of tax which would be due on the assumption that the government's evidence (bank deposits and dividends, etc.) reflected taxable income. Since the computation is merely an arithmetical process, thereby avoiding any difference of opinion as to the result, the objection must be considered as directed to the assumption that the items set forth were income. Objection was also made that such question did not include certain other facts tending to show losses. In discussing the limitations on hypothetical questions, Jones, in his Commentaries on Evidence, states: " * * * Where the facts are in dispute it is sufficient if a hypothetical question fairly states such facts as present the examiner's theory of the case. It cannot be expected that the interrogatory will include all the contentions or theory of the adversary, since this would require a party to assume the truth of that which he generally denies. * * * Each side, in an issue of fact, has its theory of what is the true state of the facts, and assumes that it can prove it to be so to the satisfaction of the jury, and so assuming, shapes hypothetical questions to experts accordingly. A question should not be rejected because it does not include all the facts of which there is any evidence at all. * * * Generally speaking the trial court is the arbiter of the propriety of the question; and the real test of the propriety of any given hypothetical question is its fairness.

\* \* \* Certainly a hypothetical question may be deemed safe from ultimate attack where there is evidence tending to prove all the facts assumed and it includes all the material facts which the evidence tends to prove and which bear upon the subject with regard to which the expert is asked to express an opinion." Sections 1327, 1328.

We conclude that the government's assumption that the receipts constituted evidence of income was the valid basis for the hypothetical question submitted. The jury still had to determine the controverted issue of whether the assumption were correct.

Appellant complains because of the court's refusal to admit evidence as to the policy of the Revenue Department which, it is alleged, permitted the taxpayer to state his income in a lump sum instead of setting forth specifically the various items and sources of such income.

The court charged the jury: "Let me impress upon you gentlemen that the form of defendant's tax return is immaterial, so far as this case is concerned. \* \* \* It makes no difference whether the defendant reported in detail the source of his gross receipts. \* \* \* The defendant is not being prosecuted in this case for any deviation from official forms. \* \* \*"

Obviously there was no prejudice in refusing to admit in evidence what in this case was immaterial. The controversy was not one dealing with appellant's failure to particularize the items or sources of income. It was whether appellant made a false return as to total income and whether, in so doing, he was guilty of willfully attempting to defeat and evade his tax.

Appellant also contends that the trial court erred in overruling his motions for a directed verdict on the ground that the government failed to prove a net taxable income in excess of the amount shown on the appellant's returns. As we stated in the Oliver Case, supra, even though the deposits in themselves were not sufficient evidence to establish the conclusion that they were all income, they nevertheless were substantial evidence of income. In the instant case, part of the deposits, $99,500, were identified by the witness Ries, as being net profit. There was ample evidence to warrant a jury in finding that the dividends received by Dr. Omens, amounting to $36,750, were part of appellant's income. The defense offered some evidence as to deductions, and the jury might have concluded that he had asserted all his allowable deductions, thereby leaving taxable income far in excess of reported income.

The argument is one not infrequently presented to an appellate court, where the accused is convicted on evidence which to him seems unimpressive and which he declined to explain or dispute by his own word spoken from the witness stand. It is of course true, in all criminal cases, that the accused need not testify, and his failure to so take the stand can afford no opportunity for comment of counsel or deduction by court or jury. But, on appeal, when he challenges the evidence to support a verdict against him, he cannot fairly ask a court to assume that the prejudicial facts which are unexplained could have been overcome on various hypotheses had the accused testified. To illustrate, in the instant case there was direct evidence to the effect that a considerable part of the large sums deposited in appellant's bank accounts came from the operation of gambling businesses in a suburb of the city of Chicago. Moreover, other evidence, while not as direct, was about as persuasive that other sums so deposited came from his participation in other enterprises in the nature of a gambling business, such as dog races, etc.

It may be true that appellant did not receive for himself all of the profits of these gambling businesses, but that profit nevertheless was turned over to him and under his direction placed in his bank account. It may also be true that substantial sums were by him paid out for the protection of these unlawful businesses, leaving his net profits considerably less than those claimed by the government. But if such deductions were made, or if the sums deposited in appellant's name were subsequently divided among others interested with him, there is no word from him nor from other witnesses to establish the possibility.

Certainly the evidence in this case respecting the guilt of the accused was not only sufficient to go to the jury, but, in the absence of any explanation or denial, appellant's guilt seems well established. Counsel's argument is based on a possibility, to establish which the court must conjecture. Against the persuasibility of such a conjecture is the unexplained and undenied positive evidence of receipts by appellant of gambling profits and their deposit in his bank account. We hardly need dwell on the further incriminating fact conclusively established that appellant conducted most of his bank transactions under an assumed name. The court

properly left the question of appellant's guilt to the jury.

Other questions presented, the court has considered. No reversible error has been found in any of them.

The judgment is affirmed.