**UNITED STATES   v.   MANNO et al.**

**UNITED STATES   v.   PARDY et al.**

Nos. 53 CR 421–422.

United States District Court
N. D. Illinois.
Jan. 13, 1954.

Crawford & Healy, Chicago, Ill., for defendants Nick Manno, Sam Manno and Fred Manno.

George F. Callaghan, Chicago, Ill., for defendants Samuel Pardy and Thomas Manno.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for plaintiff.

HOFFMAN, District Judge.

The defendant Thomas Manno has moved to dismiss indictment 53 CR 421. The defendants Thomas Manno and Samuel Pardy, by motion and amended motion, have moved to dismiss indictment 53 CR 422.

The defendants Nick Manno, Sam Manno and Fred Manno have moved to dismiss indictment 53 CR 421 and to suppress and order the return of evidence.

The indictment in 53 CR 421 is against Nick, Sam, Fred and Thomas Manno, containing 16 counts charging violation of Section 145(b), 26 U.S.C. This indictment was returned June 22, 1953. The indictment in general charges wilful and fraudulent evasion of income tax liability by understating net income and resultant tax. The first three counts relate to Nick Manno and cover the years 1947–1949. The second three counts relate to Sam Manno for the same period. The third three counts pertain to Fred Manno for the same period. The tenth count concerns Thomas Manno for the year 1947. The eleventh count covers all four Mannos in connection with the return of one Tremont for the year 1947. The twelfth count concerns all Mannos in connection with the return of one Manning for the year 1947. The thirteenth and fifteenth counts concern Nick, Sam and Fred Manno in connection with

the returns of Tremont for the years 1948 and 1949. The fourteenth and sixteenth counts concern Nick, Sam and Fred Manno in connection with the return of Manning for the years 1948 and 1949.

The indictment in 53 CR 422, also returned on June 22, 1953, charges a similar offense of income tax evasion in the first three counts by Sam Pardy for the years 1948–1950, and in the second three counts by Thomas Manno for the same three years.

The motion to dismiss, filed on behalf of Thomas Manno in 53 CR 421, urges (1) insufficiency of Counts 10, 11 and 12 for the following reasons: (a) uncertainty of allegation of accusation; (b) failure to state an offense; (c) insufficient averment of the elements of a crime, thereby making it impossible for the defendant to prepare a defense; and (d) vagueness of charge such as to violate the Sixth Amendment to the Constitution; (2) improper joinder and consolidation of charges against Thomas Manno in Counts 10 to 12, with charges against others in Counts 1 to 9, in that the various offenses charged are distinct and separate offenses committed by others than Thomas Manno; (3) the large number of counts containing misjoinder of parties and offenses results in the confusion of the Court and the defendant, to his prejudice; (4) the indictment violates the provisions of Rule 8 of the Federal Criminal Rules, 18 U.S.C.

The motions to dismiss, on behalf of the four Mannos, and the motion to suppress concern these issues:

1. The Treasury officials have arbitrarily selected persons they deem to be of the "racketeer" type to be prosecuted, and have therefore unconstitutionally discriminated against them and refused to use the authority to compromise given by Section 3761 of the Internal Revenue Code, 26 U.S.C. § 3761. It is claimed also by the four Mannos that the Section itself is unconstitutional inasmuch as it contains no standard of administrative action.

2. The evidence—certain books and records of the defendants—should be suppressed and the indictments based on them quashed because they were obtained from the defendants by the trickery of the Government officials, who stated their investigation was for the determination of civil liability of the defendants. The defendants therefore contend that the evidence was obtained by unreasonable search and seizure.

The defendants also argue that the Government by a ruse procured the defendants' signatures by requesting them to call in person for registered mail. The defendants also complain that they were subpoenaed before the Grand Jury and forced to appear and that their claim of privilege inevitably resulted in their testifying against themselves.

3. It is claimed further that there is a misjoinder of counts in the indictment inasmuch as the indictment concerns different persons, different tax years, with no allegation that the alleged offenses arise out of the same act or transactions or constituting part of a criminal scheme.

A separate motion to dismiss and an amendment thereto have been filed on behalf of the defendants Samuel Pardy and Thomas Manno in 53 CR 422, which raise substantially the same points above outlined.

The Government has filed answers to the motions to dismiss based on misjoinder, alleging that as to indictment 53 CR 421 the tax evasions charged were predicated upon unreported partnership income for various firms in which the several defendants or some of them were partners.

Extensive briefs have been filed by the respective defendants and by the Government in support of their positions. Inasmuch as the motions to dismiss and to suppress raise related issues, they will be considered together.

### Sufficiency of Form of Allegations of Indictments

As above indicated, the defendants challenge the phraseology and form

of the indictments in many respects. There can be no quarrel with the defendants' abstract statement of the rule of law that the "defendant is entitled to such facts in the indictment as will enable him to understand the accusation against him and to prepare for his defense" or with the rulings of the cases aptly cited in support thereof. However, indictments in phraseology paralleling the instant indictments have been held sufficient against such an attack. Reference is made to the case of Himmelfarb v. United States, 9 Cir., 175 F.2d 924, at page 925, where the Court said:

> "Indictment charging that defendants attempted to defeat and evade federal income taxes for certain years by filing false tax returns and understating net income and income tax sufficiently charged violation of statute against attempted income tax evasion."

To the same effect are the holdings in Cave v. United States, 8 Cir., 159 F.2d 464; United States v. Potson, 7 Cir., 171 F.2d 495; United States v. Yeoman-Henderson, 7 Cir., Inc., 193 F.2d 867; Guzik v. United States, 7 Cir., 54 F.2d 618; and United States v. Skidmore, 7 Cir., 123 F.2d 604.

### Misjoinder of Offenses and Misjoinder of Defendants

■ In answer to the defendants' assertions of misjoinder of offenses and defendants, the Government states that if relief on that ground be grantable at all it must be effected by severance of offenses or defendants under Rule 14 and that a dismissal on the ground of misjoinder is reversible error under the decision of the United States Court of Appeals for the Fifth Circuit in the case of United States v. Northeast Texas Chapter, National Electrical Contractors Association, 181 F.2d 30, and the case of Finnegan v. United States, 204 F.2d 105, decided by the United States Court of Appeals for the Eighth Circuit. In the latter case the Court said at page 109 of 204 F.2d:

> "The motion to dismiss for misjoinder need only be given passing notice. Defendant was not in any event entitled to a *dismissal* of the indictment because of misjoinder. (Citing cases.)" (Italics supplied.)

The Government's answer sets forth the factual bases for the joinder of the defendants and offenses and makes it sufficiently clear that there is a logical reason for their joinder. These various defendants were partners in different firms for varying periods of time. Those who were partners in the same firms for similar periods of time were joined in the respective indictments. The counts, though numerous, concern the individual returns of the respective partners for the years involved in the duration of the respective firm's existence. Since the gist of the indictments is the understatements of the partners' individual returns by the amounts unreported in the respective firm's income tax returns, there is a definite and unifying core around which revolve the numerous offenses and defendants charged in the indictments. It is obvious that all the individual partners' returns will be directly affected by any misstatement in their firm's return.

Rule 8 of the Federal Rules of Criminal Procedure provides the criteria for joinder to be whether "the offenses charged * * * are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan" and defendants may be joined who are alleged "to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. * * *" Such a connection seems evident in this case.

In the case of Morris v. United States, 12 F.2d 727, the Court of Appeals for the Ninth Circuit sanctioned consolidation for trial of six indictments charging partners with making false partnership and individual returns. In the Skidmore

case, 123 F.2d 604, an indictment covered charges of tax evasion for the years 1933 to 1937 inclusive. The Court of Appeals for the Seventh Circuit said at page 607 of 123 F.2d:

"The general form of this indictment has been approved by this court many times." Citing Capone v. United States, 7 Cir., 56 F.2d 927; Guzik v. United States, 7 Cir., 54 F.2d 618; and O'Brien v. United States, 7 Cir., 51 F.2d 193.

As to joinder in one indictment of counts covering tax evasion for several years, the Court of Appeals for the Second Circuit said in the case of United States v. Sullivan, 98 F.2d 79, at page 80:

"Although the attempt to evade the tax for a given year is a separate offense from an attempt to evade the tax for a different year; they are clearly crimes 'of the same class.' Moreover, the evidence of intent to evade the tax in one year is competent evidence of intent to evade the tax in a later year. * * Indeed, the crimes charged in the indictment describe one course of conduct extending over several years, which results in separate offenses simply because the duty to file a return and pay the tax is one that recurs every twelve months. Under these circumstances we think it very clear that joinder of the charges was proper."

The same evidential showing, that is to say, an understatement of partnership income for a particular year will automatically affect each partner's income for the year involved.

### Constitutional Attack on Ground that Statute Relating to Compromise is Discriminatorily Used Against "Racketeers"

■ It is the defendants' contention that the Internal Revenue officials have discriminated against so-called "racketeers", singling their cases out for prosecution and not utilizing the statutory power of compromise. In support of their position the defendants have cited cases outlining the proper administration of Government, but none of them touches closely to the instant case. These decisions may be summed up by saying that citizens are entitled to equal protection of the law but these decisions do not hold that citizens are entitled to equal protection *from* the laws. The fact that not all criminals are prosecuted is no valid defense to the one prosecuted. As the Government points out, and many cases support its position, the administration of such matter lies in the discretion of the prosecuting attorney. The Government also calls attention to the fact that the designation of "racketeer" type is unrelated to the return of indictments by grand juries who have no knowledge of the Treasury Department's characterization of the case.

Long ago the Supreme Court, in the In re Confiscation Cases, 7 Wall. 454, 74 U.S. 454, 19 L.Ed. 196, took this position:

"Public prosecutions, until they come before the court to which they are returnable, are within the *exclusive* direction of the district attorney. * * *"

In a suit where the United States sought forfeiture of an automobile, Judge Sparks stated, United States v. One 1940 Oldsmobile, 7 Cir., 167 F.2d 404, at page 406, that:

"There is quite a large discretion vested in the District Attorney to resubmit a presentment to the Grand Jury, or to subsequent grand juries, and this is not subject to the control of the District Court."

### Obtaining Signatures of Defendants in Registry Postal Office Through Trickery

■ Defendants complain about the postal authorities requiring defendants to pick up mail at the post office and signing therefor after identifying themselves, instead of delivering the mail to their known addresses as was customary, in order to obtain accurate signatures for use by handwriting experts. The Government's reply is that, conceding

**516**

for the purpose of the motion the facts to have been as stated, they are immaterial in connection with the question of a motion to dismiss, inasmuch as it is not known whether they were introduced as evidence before the Grand Jury, or whether the indictments were procured upon other evidence legally introduced. In this connection the Government cites Shushan v. United States, 5 Cir., 117 F.2d 110; Friscia v. United States, 5 Cir., 63 F.2d 977. The Court can find no fault with the Government's procuring the signatures on registered letters. This is a duty performed pursuant to regulation, although the Government may have had an ulterior motive in requiring the defendants to pick up the letters in person so that they might be certain to have the signature of the defendants in person. The purpose of requiring signatures to registered letters is to make absolutely certain that the addressee receives the letter. The Government had that duty to the sender.

## Motion to Suppress

The defendants assert in their argument on their motion to suppress that initially the Government agents made arrangements to have their usual investigation of the books of the firms of which the defendants were partners, as they had done in previous years, and permission was granted to make the investigation. A subsequent investigation was made some months later, and the circumstances surrounding that later investigation gave rise to the instant motion. The defendants contend that the Government agents by stealth and misrepresentation obtained permission to make further examination of the books. The defendants assert that they were "prevailed upon to deliver their records to Government officials with the understanding that the purpose of the investigation was civil and not with a view to criminal prosecution."

The Government in its brief replies in substance that the defendants voluntarily made their records available for the inspection of the revenue agents at the time the investigation commenced, and that at that time there was no evidence that criminal prosecution was contemplated; that the facts show that the defendants had been investigated in the past and that there had been no evidence uncovered by the investigating agents of criminal fraud. The Government avers that there was no occasion or necessity for warning the defendants that any statements they might make or documents they might produce would be used against them in a criminal prosecution. The Government asserts further that when the revenue agent uncovered circumstances that indicated the possibility of criminal fraud, the defendants were advised of these facts and told that the matter would be turned over to the Intelligence Division. It is evident that there is a factual controversy as to the circumstances surrounding the examination of the books and their relinquishment to the Government. In the opinion of the Court, this controversy needs to be resolved by evidentiary proof. The principles of law relative to the legality of investigations of books and the evidence procured therefrom seem well settled. Evidence obtained by stealth is subject to a motion to suppress. Gouled v. United States, 255 U.S. 298, at page 305, 41 S.Ct. 261, 65 L.Ed. 647. On the other hand, evidence voluntarily furnished is admissible inasmuch as the privilege against self incrimination may be waived. Nicola v. United States, 3 Cir., 72 F.2d 780; Hanson v. United States, 8 Cir., 186 F.2d 61.

The Court is of the opinion that the defendants are entitled to a hearing in order to determine the precise facts surrounding the investigation.

## Violation of Fifth Amendment by Forcing Defendants to Appear Before Grand Jury and Claim Privilege Against Self Incrimination

The defendants assert that the law condemns the calling of defendants before the Grand Jury where they thereafter claim privilege against self incrimination to their resultant detriment, and cite in support of this position the

cases of United States v. Lawn, 53 USTC par. 9288, and United States v. Housing Foundation of America, 3 Cir., 176 F.2d 665. The Government distinguishes these cases on the ground that they involve persons against whom criminal proceedings had already been brought and had resulted in information or indictments, whereas the defendants here were merely witnesses when they were called before the Grand Jury, and the Government insists that the law is well settled that the appearance of a witness before a Grand Jury in response to a subpoena does not constitute a violation of his constitutional rights against self-incrimination even though the witness is later indicted by the same Grand Jury. Many cases are cited by the Government to support its contention.

 The Fifth Amendment, guarantee against self incrimination, is applicable to investigations by a Grand Jury, United States v. Monia, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376, but as there said:

> "The Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment."

The protection afforded by the Fifth Amendment is to permit a person to claim the privilege against self incrimination if he wishes so to do, but the Amendment does not prevent his being *called* to testify where he makes his election to testify or not to testify. As was said in O'Connell v. United States, 2 Cir., 40 F.2d 201, at page 205:

> "The final contention of the appellant is that, regardless of the details of his examination, it was a violation of his rights under the Fifth Amendment to require him to be sworn and examined before the grand jury, because its investigation, though ostensibly general, was in reality an attempt to secure from

his own mouth evidence upon which to indict him. Some judicial support may be found for such a view. * * * But it has not prevailed generally. * * * The mere summoning of a witness before the grand jury gives no basis for the assumption that his constitutional privilege will be impaired. * * "

The respective motions of the defendants in Cases 53 CR 421 and 53 CR 422 for the dismissal of the indictments are denied.