UNITED STATES of America, Appellee,

v.

Richard HEBEL, Appellant.

UNITED STATES of America, Appellee,

v.

Carlyle MERRITT, Appellant.

Nos. 81–1910, 81–1911.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1981.

Decided Jan. 22, 1982.

Certiorari Denied April 26, 1982.
See 102 S.Ct. 2014.

996

William Sidney Smith, argued, William B. Serangeli, Gary A. Robinson, Gregory L. Biehler, Smith, Schneider & Stiles, P. C., Des Moines, Iowa, for Richard Hebel and Carlyle Merritt, appellants.

James H. Reynolds, argued, U. S. Atty., Cedar Rapids, Iowa, for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

PER CURIAM.

Carlyle Merritt and Richard Hebel appeal from single-count convictions for criminal violation of the income tax laws. In a bench trial on stipulated facts the district court[1] found Merritt guilty of knowingly and willfully subscribing his 1975 income tax return which failed to report his true income. The court convicted Merritt of violating 26 U.S.C. § 7206(1), and fined him $5,000. At the same bench trial, the district court found Hebel guilty of income tax evasion for calendar year 1975, in violation of 26 U.S.C. § 7201, and fined him $10,000. We affirm.

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the

Merritt and Hebel do not dispute these violations on appeal. Each taxpayer voluntarily disclosed his filing of a false return to the Internal Revenue Service, corrected the tax discrepancies in an amended return, and paid the appropriate tax due. They contend, however, that an IRS practice of not prosecuting persons who make such voluntary disclosures bars their prosecution.

Based on this alleged practice of the IRS, appellants assert the following issues on appeal:

1) That the trial court erred in finding that defendants had not established a governmental practice not to prosecute voluntary disclosure tax cases and therefore erred in denying the motions to enjoin their indictments, and motions to dismiss and suppress;

2) That the trial court erred in denying dismissal on grounds of selective prosecution; and

3) That these prosecutions violated due process and denied taxpayers effective assistance of counsel because their attorneys counseled them to make disclosure of the facts concerning their tax delinquencies in reliance upon the policy and practice of the Government not to prosecute taxpayers who voluntarily disclose tax falsifications.

The district court initially referred these matters to Magistrate James D. Hodges, Jr., to hear and make recommendations concerning defendants' motions to suppress evidence and to dismiss the prosecutions. After an evidentiary hearing, the magistrate made the following findings:

8. Messrs. Smith and Brown [experienced tax lawyers] advised defendants that based upon their experience in the tax area that while the Internal Revenue Service and Justice Department had publicly stated in 1952 that they would no longer assure taxpayers of nonprosecution where a voluntary disclosure of previous tax errors was made, that it had

Northern District of Iowa.

been counsels' experience that prosecution would not result where a true voluntary disclosure was made.

9. Based upon this advice defendants requested counsel to disclose to the Internal Revenue Service that apparently errors existed in their income tax returns. Pursuant to these instructions counsel informed the Internal Revenue Service on December 2, 1976 of the defendants' identities and that there appeared to be substantial tax deficiencies on defendants' individual returns as well as those of Hebel Fertilizer & Chemical, Inc. for the years at issue. At this time neither defendants nor counsel was aware of any pending investigations involving defendants.

10. At the time the disclosure was made to Robert J. Moeller, acting Chief of the Internal Revenue Service Audit Division, and Jack L. Schroeder, Chief of Internal Revenue Service Branch I counsel were advised that defendants' returns had previously been referred to a Revenue Agent for audit.

11. Defendants provided a complete and absolute disclosure of any and all transactions which may have had tax ramifications for the years at issue to his counsel and to the CPAs engaged by counsel. At the conclusion of the independent audit defendants caused amended individual and corporate tax returns to be prepared. These amended returns were filed on December 27, 1976 and the tax due of approximately $200,000 was paid.

12. Subsequent to filing the amended returns, defendants supplied the IRS with detailed identification of the location, amounts, time periods and occasions of the then determined inaccuracies in defendants' tax returns by allowing the IRS to examine and make copies of extensive accounting workpapers and produced by the accounting firm working for defendants' counsel. Defendants also provided access to their original records and were interviewed by the IRS regarding their tax returns.

13. Defendants were indicted on February 24, 1981.

\* \* \* \* \* \*

15. Defendants' disclosures were voluntarily made in reliance upon the advice of counsel but with knowledge that, while it was counsel's belief that they would not be prosecuted, there was no absolute grant of immunity from prosecution.

[*United States v. Hebel and Merritt*, No. CR 81–3001 (N.D.Ia. May 5, 1981 at 2–4) (magistrate's report and recommendation).]

In considering the motions to suppress and dismiss, Magistrate Hodges reviewed the same factual matters asserted in this appeal. His opinion stated in part:

In light of the fact that the IRS publicly abandoned its voluntary disclosure policy in 1952 and defendants and their counsel were aware of this, the court is of the view that defendants' disclosures were knowingly and voluntarily made and accordingly all motions should be denied, alternatively, if a voluntary disclosure policy should be found to exist there appears to be a serious question as to whether defendants' disclosure was in fact a true voluntary disclosure.

Specifically, defendants have moved to dismiss the indictment against them under the due process clause of the fifth amendment to the United States Constitution based upon lack of notice, failure to comply with the Administrative Procedure Act, equitable estoppel and selective prosecution.

The record appears to be relatively clear that the IRS and Department of Justice followed a written policy of not prosecuting criminally, taxpayers who made voluntary disclosures of irregularities in their tax returns during the period between 1934 and 1952. However, this policy was abandoned in 1952 and from that time until the present it has been the announced policy of the IRS that a voluntary disclosure would be considered along with all other facts and circumstance of a case in determining whether or not criminal charges would be filed. See general-

ly, *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 235 n. 2, 78 S.Ct. 245, 248, 2 L.Ed.2d 234 (1957); *United States v. Choate*, 619 F.2d 21 (9th Cir. 1980). Since counsel was aware of this change in policy and advised defendants of the change, defendants' arguments based upon lack of notice and under the APA must fail. In this regard, defendants argue that while no written policy existed there was an unwritten practice of not prosecuting taxpayers who made a voluntary disclosure. The simple answer to this is defendants have failed to establish the existence of such a practice. While there appears to have been few, if any, prosecutions of true voluntary disclosures the IRS has consistently reserved the right to do so. Indeed, the position is recognized by the legal publications submitted by the government and at best there appears to be disagreement among the bar as to the possibility of prosecution.

\* \* \* \* \* \*

Further, defendants' motion based upon selection [sic] prosecution is without merit. To prevail on this motion defendants must show both that he was singled out for prosecution and that the prosecution was based upon impermissible grounds. *See e.g., United States v. Larson*, 612 F.2d 1301 (8th Cir. 1980); *United States v. Catlett*, 584 F.2d 864 (8th Cir. 1978); *United States v. Alarik*, 439 F.2d 1349 (8th Cir. 1971) [.] Here, defendants have failed to meet either prong of the test. In light of the amount of tax due and the status of the IRS's investigation at the time of disclosure, the record shows ample reason for prosecuting defendants. Further, defendants have been unable to raise any colorable claim of improper motive.

Finally, defendants' motion to suppress must likewise be denied. It is well recognized that the government must establish guilt by evidence independently secured and not by evidence obtained as a result of trickery or coercion from defendants, *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1960). Further,

this principal clearly includes evidence induced from a person under a governmental promise, either direct or implied, of immunity, *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1857). Here, however, the record does not support a finding that defendants' disclosures were brought about as a result of any government conduct. Rather, it does support a finding that all disclosures were freely made by defendants in hope that they would not be prosecuted rather than in reliance upon any governmental promise of immunity.

Indeed, as noted above, the government has withdrawn its policy of nonprosecution of voluntary disclosures and this fact was known to counsel and related to defendants. Further, there is no evidence of any acts on the part of the government which could be considered calculated to lead defendants to believe that the practice was any different from the stated policy. Indeed, this record reveals that the IRS and its officials have consistently maintained that prosecution was a possibility in voluntary disclosure cases. Finally, defendants have produced no evidence of direct promises or inducements made to defendants or counsel during the proceedings.

[*United States v. Hebel and Merritt, supra* at 4–7 (magistrate's report and recommendation).]

The magistrate recommended denial of the motions, and the district court accepted that recommendation. Thereafter, the trial proceeded before the district court upon facts stipulated by the parties subject to reserved objections. The district court found each defendant guilty on one count of a multiple indictment. On appeal, the defendants attack the findings and rulings denying dismissal of the indictments and suppression of the evidence.

■ We agree with the district court. The magistrate's findings, which are supported by the evidence, demonstrate that no governmental policy or practice on voluntary disclosure relating to false tax returns necessarily relieves taxpayers who file false

tax returns from criminal prosecution. The prior existence of that policy and its abandonment came to the attention of the Supreme Court in *United States v. Shotwell Manufacturing Co.*, 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957). The Court noted:

> Under that policy, first announced by the Treasury Department in 1945, the Department did not refer to the Department of Justice for prosecution cases of intentional income tax evasion where the taxpayers had made a clean breast of things to the Treasury before any investigation had been initiated by the Revenue Service. This policy was set forth in various informal announcements by Treasury officials, but was never formalized by statute or regulation. The policy was abandoned in January 1952. [*Id.* at 235 n.2, 78 S.Ct. at 247 n.2.]

As of 1973, the Treasury Department's "voluntary disclosure policy" read as follows:

> The Treasury Department on January 10, 1952, formally abandoned its longstanding "voluntary disclosure policy". Treasury Department Information Release, No. S–2930; 1955 P–H, par. 18, 604–A. It is, therefore, no longer an administrative basis for declining prosecution in the Revenue Service that a prospective defendant voluntarily revealed his tax fraud to an appropriate official of that Service before any investigation of his affairs had begun. * * * Now the fact that a taxpayer seeks voluntarily to rectify a false return without prodding by investigators or the threat of investigation is given some weight in determining whether to prosecute but is not conclusive of the issue. [U.S. Department of Justice Manual for Criminal Tax Trials, Ch. 1, p. 5.]

In an earlier civil case brought by Hebel to enjoin his prosecution, the same district court noted the Treasury Department's 1973 position. *Hebel v. United States Department of Justice*, Nos. C 80–155, C 80–156 (N.D.Ia. Feb. 18, 1981). *See also United States v. Choate*, 619 F.2d 21, 23 (9th Cir. 1980).

In this case, taxpayers Hebel and Merritt received a substantial benefit from disclosing and rectifying past errors. The indictment consisted of seven counts, three counts each charging Hebel and Merritt individually, and one count charging them both. Each defendant was convicted on only one count, and neither received a sentence of imprisonment.

 Regardless of whether a taxpayer actually benefits or suffers detriment from voluntarily disclosing and rectifying faulty tax returns, that disclosure itself does not insulate the taxpayer from prosecution under any administrative policy or practice recognized by this court. Taxpayers and their attorneys cannot rely on a long-since abandoned policy of non-prosecution when a taxpayer voluntarily discloses violation of the tax laws. Accordingly, we affirm the convictions of Hebel and Merritt on the basis of the magistrate's findings and opinion, adopted by the district court.